(C. D. 539)

GUY B. BARHAM CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 8, 1941)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an action against the United States in which the plaintiff seeks to recover a sum of money paid upon certain machinery which was entered for transportation in bond at the port of Los Angeles. Plaintiff protests the payment of $37.68 and claims that the machinery is free as a nonimportation, or, in the alternative, that it is free of duty by virtue of section 553 of the Tariff Act of 1930, providing free entry for merchandise entered for transportation in bond.

An earlier protest filed by the importer, directed against the collector's refusal to accept a landing certificate and cancel the bond, was dismissed by this court on the ground that evidence was lacking to show that the entry had been liquidated or that any liquidated damages or customs duties had been assessed or paid on the merchandise, and that this court was without jurisdiction over the question presented. (See Abstract 27573.) Thereafter liquidated damages in an amount equal to the duty on the machinery were assessed and paid and the importer now makes claim that such assessment is illegal, as stated above.

The provisions of the statute insofar as applicable to this case, are as follows:

Section 553. Any merchandise * * * shown by the manifest, bill of lading, shipping receipt, or other document to be destined to a foreign country, may be entered for transportation in bond through the United States by a bonded carrier without appraisement or the payment of duties and exported under such regulations as the Secretary of the Treasury shall prescribe, * * *.

At the hearing no testimony was produced but the plaintiff offered and there was received in evidence the official file contained in the protest jacket. Among these papers we find a letter from the Acting Commissioner of Customs to the collector of customs at the port of Los Angeles, a letter addressed to the importer by the collector at Los Angeles and the papers in an earlier protest, which include a report by the collector, a landing certificate, a bill of lading and a transportation entry.

From this evidence the facts appear as follows. This machinery was originally imported into the United States from Germany on the M S *Schwaben* and a transportation entry was filed on February 16, 1933, the final destination of the merchandise being given as Sydney, Australia. Subsequently the merchandise was shipped from the port of Los Angeles on the Norwegian M S *Athene.*

The collector in his letter addressed to the importer herein states that the notation on the landing certificate produced indicated that the merchandise was not landed but was fitted to the engine and that said landing certificate was not considered evidence of bona fide exportation, as defined in article 1253 of the Customs Regulations of 1931. Said article is as follows:

Art. 1253. Exportation—When not bona fide.—(a) An exportation is a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country. The shipment of merchandise abroad with the intention of returning the same to the United States is not an exportation. Merchandise of foreign origin returned from abroad under these circumstances is dutiable according to its nature, weight, and value at the time of its original arrival in this country.

We have examined the landing certificate in evidence and find that it states as follows:

I hereby certify that the merchandise hereinafter described shipped by Chief Engineer mv *Athene* from the port of Los Angeles, California, on board the mv *Athene* on or about the 28th day of Feby. 1933 has been landed at this port from on board the mv *Athene* on or about the 21 day of April 1933

This is followed by a description of the merchandise and a notation in handwriting as follows:

> Not for official Commonwealth customs purposes
> Ships fittings fitted to engine

Apparently the collector was of the opinion that the machinery was not landed at Melbourne, Australia. On this point the letter of the Acting Commissioner of Customs states:

According to a landing certificate furnished, the merchandise was landed at Melbourne, Australia, on June 29, 1933, and was reladen on the same vessel. The master of the *Athene* has furnished a letter in which it is stated that after the machinery in question was reladen on his vessel, it was installed to repair the vessel while in Australia, is now a part of the vessel, and is not retained on the ship as spare parts.

You state that the question involved in this case would appear to be whether the reshipment of the merchandise by the *Athene* should be considered as the completion of a bona fide exportation as contemplated by the statutes, as it would seem obvious that the alleged compliance with the regulations by obtaining a landing certificate at Melbourne was solely for the purpose of avoidance of the payment of duties due in the event that no exportation of the merchandise had been made.

The Bureau is of the opinion that the machinery lost its identity when installed in the vessel in Australia and was not dutiable merchandise when the vessel returned to this country. The shipment of the machinery to Australia, as evidenced by the landing certificate, and its incorporation in the *Athene* in the foreign country, therefore, should be considered a bona fide exportation, and you will please be governed accordingly. This is a different situation from the case reported in T. D. 39343, wherein the article exported was returned to this country in the identical condition it had when exported.

The collector apparently did not agree with the Bureau of Customs that there had been a bona fide exportation and assessed the amount of $37.68, refund of which the importer in this action now seeks.

We find nothing in the evidence presented to warrant this finding. The landing certificate states that the motor parts were landed at a port of Australia. The Commissioner of Customs reports that the machinery was installed in the vessel after it was reladen on the vessel.

The Government in its brief cites Department rulings found in T. D. 36177, T. D. 36396, and the case of *American Mica Co.* v. *United States*, T. D. 31143, G. A. 7139; also *Indianapolis Motor Speedway Co.* v. *United States*, T. D. 39343, G. A. 8585, in support of the assessment. We have examined all of these decisions and rulings and find that they are distinguishable from the case now before us. In all of the above-cited cases the merchandise which left the United States was returned in the same condition as it was when exported. In the instant case the machinery was incorporated in the vessel in a foreign country and by reason of that fact it ceased to be merchandise and became a part of a vessel, upon which no duty is assessable.

In the case of *Swan & Finch* v. *United States*, 190 U. S. 143, cited by the Government, the court overruled the importer's claim for drawback on certain lubricating oil obtained from imported rapeseed, which oil was loaded on a vessel and consumed thereon, on the ground that this did not constitute an exportation. In the instant case the evidence shows that the machinery was landed in a foreign country and incorporated in the vessel after having been reladen on said vessel.

Upon the record as presented we sustain the claim of the plaintiff that the machinery was exported and that the plaintiff herein should not be required to pay the sum assessed.

Judgment will be rendered accordingly. It is so ordered.